United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT S. MILTON,<br><br>    Plaintiff,<br><br>  v.<br><br>F. JACQUEZ, Warden; M. CATE, Secretary of the California Department of Corrections and Rehabilitation; C.M. PATTEN, Captain; J. AKIN, Lieutenant; D. W. BRADBURY, Associate Warden; CHAUCER, Sergeant; J. FRISK, Sergeant; C. PARRY, Lieutenant,<br><br>    Defendants.<br>                                       / | No. C 09-5785 WHA (PR)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; STAYING CASE**<br><br><br>(Docket Nos. 26, 34) |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, has filed a civil rights complaint under 42 U.S.C. 1983. Defendants F. Jacquez, Matthew Cate, C.M. Patten, J. Akin, D.W. Bradbury, Chaucer, J Frisk, and C. Parry have filed a motion for summary judgment on plaintiff's Eighth Amendment claim. The motion does not address plaintiff's retaliation claim. Plaintiff has filed an opposition. Although ordered to do so, defendants did not file a reply brief. For the reasons discussed below, defendants' motion for summary judgment is **DENIED**.

## STATEMENT

Plaintiff began his incarceration in the California prisons in 2001 in San Quentin State Prison (Pl. Depo. 8). He requested placement on a "sensitive needs yard" ("SNY") away from

the general inmate population, not because he had dropped out of a gang or the nature of his conviction but because he did not want to be recruited into a gang in the prison's general population (*id.* 9). The request was granted (*ibid.*).

In March 2002, plaintiff was transferred to California State Prison, Corcoran, and placed in the Secured Housing Unit ("SHU") as punishment for hitting a Sergeant at San Quentin (*id.* 11). He again requested placement on an SNY in the SHU, but the request was denied because there was no SNY within the SHU at Corcoran at that time (*id.* 13). He remained in the SHU due to repeated assaults on prison guards until September 2005, when he was transferred to federal custody (*id.* 18). He then returned to Corcoran in December 2006, by which time the Corcoran SHU had an SNY (*id.* 18-19). Plaintiff's request to be placed in the SNY was granted (*ibid.*). In August 2008, he was moved out of the SNY to the general SHU area based on reports that he had offered to hire another inmate to kill a prison guard after being paroled (*id.* 20-21). Plaintiff was not otherwise disciplined based upon such reports (Opp. 2). In November 2008, plaintiff was transferred from Corcoran to the SHU at Pelican Bay (Pl. Depo. 22).

At Pelican Bay, plaintiff again requested placement in an SNY, but the request was denied by Pelican Bay's "Institutional Classification Committee," chaired by defendant Warden Jacquez, because Pelican Bay has no SNY (*id.* 22-23; Opp. 2). Instead, the committee indicated that he could possibly share a cell with another inmate who had security concerns and in the interim assigned plaintiff to his own cell without a cellmate (Pl. Depo. 24-25). In the SHU, inmates do not eat, shower, or exercise, and as a result they are not supposed to come into contact with each other unless they share a cell (*id.* 51). For three to four months plaintiff was housed in a cell in sections C1 and then C2 of the SHU without incident (*id.* 25-27). Plaintiff had been requesting to move to section C12 of the SHU because he believed that inmates in section C12 were considered by gang members at the prison to have "sensitive needs" (*id.* 27). According to plaintiff, there are six "pods" within section C12, and pods A-D are considered to house sensitive needs inmates, but pods E and F do not (*id.* 28-29, 54).

In March 2009, he was moved to a single cell in section C12, but to the F "pod" (*id.* 28-29). In April 2009, a prison guard who is not named as a defendant gave plaintiff's mail to the

2

1  wrong inmate; the mail was from a prison official responding to plaintiff's request for a cell
2  mate with "sensitive needs" (*ibid.*).  Plaintiff's cell door, like the doors to other cells at Pelican
3  Bay, was covered in clear plastic called Lexan, but the door was not entirely covered; there was
4  an opening to allow for meals to be passed in and out of the cell (*id.* 38).  Over the next two to
5  three months on approximately 10-20 occasions, active gang members "gassed" him as they
6  walked by his cell in the F pod, meaning they threw urine and fecal matter into his cell; on one
7  occasion, an inmate "tried to spear" him (*id*. 28-29, 30, 32-33, 37-39, 41, 45, 47, 49).  The
8  gassings themselves did not injure plaintiff, although he later contracted shingles, which he
9  claims derived from the stress of the attacks (*id.* 41-43).  Prison officials made some attempts to
10 find plaintiff a cellmate with sensitive needs, but these efforts were in vain (*id.* 33-35).
11     In January 2010, plaintiff was moved out of the SHU (*id.* 44), after which he did not
12 suffer any problems from other inmates (*id.* 57).

## ANALYSIS

**A.   STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial *Ibid*.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

**B.     PLAINTIFF'S CLAIMS**

Plaintiff claims that defendants were deliberately indifferent to his safety by housing him among active gang members and denying his requests for housing on a "sensitive needs yard." The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. The failure of prison officials to protect inmates from attacks by other inmates violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Id.* at 834. In this context, the deliberate indifference standard is the equivalent of criminal recklessness, i.e., the official must know of and disregards an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Ibid.* However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

In applying the deliberate indifference standard in the context of inmate attack, the court must take into account the "competing interests" of whether prison officials (1) were guided by considerations of safety to other inmates, (2) took "prophylactic or preventive measures" to protect the prisoner, and (3) whether less dangerous alternatives were in fact available. *Berg v. Kincheloe*, 794 F.2d 457, 461-62 (9th Cir. 1986) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

It is undisputed that inmates are housed on "sensitive needs yards" when they are vulnerable to attack from inmates in the general population, that defendants knew that plaintiff had been housed on an SNY at San Quentin and at Corcoran prior to his arrival at Pelican Bay, and that they nevertheless housed him in an area of the Pelican Bay SHU with active gang members. It is further undisputed that a prison guard divulged plaintiff's "sensitive needs"

4

status to inmates in general population in plaintiff's housing area, and that after this disclosure other inmates "gassed" plaintiff on multiple occasions by throwing urine and fecal matter through the opening in the protective plastic covering his cell door. Reasonable inferences can be drawn from these facts that defendants housed him in an area of the Pelican Bay SHU despite knowing that the other inmates in that area posed a substantial risk of harm to him, and that plaintiff was thereafter attacked by the other inmates.

Defendants argue that there is no evidence that they were deliberately indifferent because they did not know that plaintiff was susceptible to attack. According to defendants, inmates who are at risk from other inmates, and therefore need SNY placement, typically have a commitment offense viewed unfavorably by other inmates such as sex offenses or offenses against minors, have been labeled as a "snitch," or have dropped out of a gang. Plaintiff requested SNY placement not for these reasons but because he did not want to be recruited into or join one of the gangs in the general population, and defendants argue that they did not know that this put him at risk. There are, however, three undisputed facts from which an inference could be drawn that defendants did know that plaintiff was at risk. First, defendants knew that plaintiff had been placed on SNYs at San Quentin and Corcoran, and that this meant that prison officials at two institutions believed he was at risk of harm from the general population. Second, when plaintiff requested SNY placement, defendant Jacquez indicated that plaintiff's assigned cellmate could be limited to another inmate with sensitive needs. This suggests that Jacquez knew that plaintiff would be at risk of harm if he shared a cell with an inmate from the general population. Lastly, prison officials looked in vain for an inmate that could safely share a cell with plaintiff, i.e. one who was also not in a gang, which they would not do unless they believed he risked harm at the hands of an inmate in the general population. When they could not find such a cellmate, they allowed him to have his own cell rather than share it with an inmate in the general population. A fact-finder could infer from this evidence that defendants knew that plaintiff faced a substantial risk of harm if he was housed with inmates from the general population.

Defendants argue that they did enough to protect him because, although he was not in a

SNY, his cell was covered with hard plastic and he, like all other SHU inmates, was escorted by guards every time he was out of his cell. Plaintiff was not attacked outside his cell, however. He was attacked while in his cell by inmates who threw the "gassing" material into the cell when they walked by it. This suggests, as plaintiff asserts, that the plastic covering did not entirely block the front of his cell or protect him from harm from other inmates when they passed in front of his cell. Although there was no SNY at PBSP, defendants could have arranged for his transfer to a prison that had an SNY for SHU inmates, as they did at Corcoran. Alternatively they could have housed him in pods A-D of section C12, which were known to have other inmates with "sensitive needs." Defendants have presented no evidence, let alone uncontradicted evidence, that such alternatives were either not feasible or not practical.

Defendants also argue that plaintiff's claims fail under 42 U.S.C. 1997e(e) because he has not suffered more than de minimis injury. Section 1997e(e) requires a physical injury only to collect damages for mental or emotional injury. *See also Farmer*, 511 U.S. at 845 (prisoner need not wait until he is actually assaulted to state a claim and obtain relief on an Eighth Amendment claim). Plaintiff does not seek damages for only mental or emotional injuries, but also for his physical injuries suffered as a result of the gassing, in particular the contraction of shingles. Plaintiff also seeks injunctive relief, which means that even if physical injury were absent, as defendants contend, Section 1997e(e) would not bar his claim.

Defendants also argue that they are entitled to qualified immunity. A reasonable officer would have known at the time of the incidents in 2009 that housing an inmate who had a history of being placed in "sensitive needs" yards in an area of Pelican Bay's SHU with active gang members, and denying his requests for more protective custody, presented a serious risk of harm to the inmate. *See generally Berg*, 794 F.2d at 459; *see also Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984) (under Eighth Amendment enough to show that an identifiable group of prisoners suffer a pervasive risk of harm from other inmates if the plaintiff is a member of that group).

Defendants are not entitled to summary judgment on plaintiff's Eighth Amendment claim because reasonable inferences can be drawn from the record that defendants knew that

they housed him in an area of Pelican Bay where he faced a substantial risk of serious harm. Plaintiff also raises a claim of retaliation for filing habeas petitions, in violation of the First Amendment. Defendants are not entitled to summary judgment on this claim either as they have not addressed it in their motion.

### C. REFERRAL TO PRO SE PRISONER MEDIATION PROGRAM

The court has established a Pro Se Prisoner Mediation Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings. The proceedings consist of one or more conferences as determined by the mediator. The conferences are generally conducted at the plaintiff's institution, with the defendants or their representatives attending by videoconferencing if they wish. As summary judgment is being denied, this case is appropriate for mediation and will be referred to the Pro Se Prisoner Mediation Program.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (document number 26 on the docket) is **DENIED**.

This case is **REFERRED** to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case except those related to the mediation and compliance with the subpoena as ordered above are **STAYED** pending completion of that procedure.

The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Vadas shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties

//

//

7

otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The clerk shall send a copy of this order to Magistrate Judge Nandor Vadas.

**IT IS SO ORDERED.**

Dated: September  13 , 2011.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.09\MILTON5785.MSJ.wpd

8